SEYFARTH SHAW LLP
Brian T. Ashe (SBN 139999)
bashe@seyfarth.com
Elizabeth J. MacGregor (SBN 267326)
emacgregor@seyfarth.com
Reanne Swafford-Harris (SBN 305558)
rswaffordharris@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:     (415) 397-2823
Facsimile:     (415) 397-8549

Attorneys for Defendants
MEDIFIT CORPORATE SERVICES, INC. d/b/a "EXOS"
and JOLEEN MACKAY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELIA MASON,<br><br>        Plaintiff,<br><br>    v.<br><br>MEDIFIT, a foreign corporation, EXOS, a business organization of unknown form, JOLEEN McKAY, and DOES 1 to 10,<br><br>        Defendants. | Case No.<br><br>**NOTICE OF REMOVAL BY DEFENDANTS MEDIFIT CORPORATE SERVICES, INC. d/b/a "EXOS" AND JOLEEN MACKAY**<br><br>**[DIVERSITY JURISDICTION]**<br><br>Complaint filed:  December 16, 2016 |

NOTICE OF REMOVAL BY DEFENDANTS TO USDC

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF, SHEILA MASON, AND HER COUNSEL**:

**PLEASE TAKE NOTICE** that Defendants MediFit Corporate Services, Inc. d/b/a "EXOS" ("MediFit")[1] and Joleen MacKay (collectively "Defendants"), hereby remove to this Court the above-referenced action from the California Superior Court, County of Contra Costa, pursuant to 28 U.S.C. sections 1441 and 1446, based on diversity of citizenship jurisdiction.  28 U.S.C. § 1332.  The removal is proper for the following reasons:

## I.      BACKGROUND

1.      On December 16, 2016, an action was commenced in the Superior Court of the State of California, County of Contra Costa, entitled *Sheila Mason vs. MEDIFIT, a foreign corporation, EXOS, a business organization of unknown form, JOLEEN McKAY, and DOES 1 to 10*, Case No. C16-02413.  A true and correct copy of the Complaint is attached hereto as Exhibit A.

2.      The Complaint asserts claims for: (1) "FEHA - Disability Discrimination"; (2) "FEHA - Failure to Accommodate Disability"; (3) "FEHA - Failure to Engage in Good Faith, Interactive Process"; (4) "FEHA - Age Discrimination"; (5) "FEHA - Race Discrimination"; (6) "Labor Code Violations"; and (7) "Business & Professions Code § 15200, *et seq*."[2]  Plaintiff does not specify which causes of action she brings against which of the different Defendants.

3.      As discussed in greater detail below, MediFit is organized under the laws of the state of New Jersey and has its principal place of business in Arizona.  EXOS is not an actual legal entity, and therefore not a proper party to this action.  Joleen MacKay is a "sham" defendant who cannot not be held liable for the claims asserted, and for such purposes her citizenship may be disregarded.

4.      On April 3, 2017, Plaintiff mailed copies of the complaint, summons, notice of case management conference, civil actions packet, and notices and acknowledgments of receipt pursuant to section 415.30 of the California Code of Civil Procedure to counsel for MediFit and Ms. MacKay. True

---

[1]      "MediFit Corporate Services, Inc. ("MediFit")" is identified in paragraph 2 of Plaintiff's complaint, but identified simply as "MediFit" in the caption to Plaintiff's complaint. However, it is the same party.

[2]      There is no section 15200 of the California Business and Professions Code.

and correct copies of these documents are attached hereto as Exhibits A-E. On April 21, 2017, counsel for MediFit and Ms. MacKay signed the notice and acknowledgments of receipt on behalf of MediFit and Ms. MacKay and returned them to Plaintiff's counsel. True and correct copies of these notice and acknowledgments of receipt are attached hereto as Exhibit F.

5.      On May 1, 2017, Defendants filed an Answer to the Complaint in the Superior Court of the State of California, County of Contra Costa. A true and correct copy of the Answer is attached hereto as Exhibit G.

6.      Exhibits H through L constitute all remaining pleadings, process, and order filed in the state court action. Exhibits A through L constitute all pleadings, process, and orders filed in the state court action within the meaning of 28 U.S.C. § 1446(a).

## II.     <u>TIMELINESS OF REMOVAL</u>

7.      This Notice of Removal is timely because it is being filed within thirty (30) days of MediFit's receipt of the summons and complaint. *See* 28 U.S.C. § 1446(b)(2)(B) ("Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal."). Here, Plaintiff sent the summons and complaint to MediFit and Ms. MacKay by mail on April 3, 2017, pursuant to California Code of Civil Procedures section 415.30. Counsel for MediFit and Ms. MacKay executed the notices and acknowledgments on behalf of MediFit and Ms. MacKay on April 21, 2017, and returned them to counsel for Plaintiff. Service of those papers is "deemed complete on the date a written acknowledgment of receipt of summons is executed . . . ." Cal. Code Civ. Proc. § 415.30 (c); *see also See Langston v. 20/20 Cos.*, EDCV 14-1360 JGB (SPx), 2014 U.S. Dist. LEXIS 151477, *7 (C.D. Cal. 2014) (finding removal timely where notice of removal was filed within 30 days of Defendant's agent signing the notice and acknowledgment of receipt).

8.      Plaintiff also attempted to serve EXOS pursuant to California Code of Civil Procedure section 415.30. However, EXOS is not a legal entity and is improperly named. No agent has accepted service on its behalf. *See* 28 U.S.C. section 1446(b)(2)(b) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.").

NOTICE OF REMOVAL BY DEFENDANTS TO USDC

9.      This Notice of Removal is filed within thirty days of MediFit and Ms. Mackay executing the notices and acknowledgements of receipt of summons.  Removal is therefore timely pursuant to 28 U.S.C. section 1446(b).

## III.      JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

10.     This Court has original jurisdiction of this action under 28 U.S.C. section 1332(a)(1). This action is removable pursuant to the provisions of 28 U.S.C. section 1441(a) as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.  Plaintiff has already made a demand in excess of this figure in negotiations with defense counsel.

### A.      **Plaintiff Is A Citizen Of California**

11.     Plaintiff is and, at all times since the commencement of this action has been, a resident and citizen of the State of California.  For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intent to remain indefinitely.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

12.     MediFit's review of Plaintiff's payroll records reveals that Plaintiff resides in California. *See* Declaration of Cara Soffer ("Soffer Decl."), ¶ 5.  Further, the Complaint alleges that Plaintiff was employed at the Chevron Campus, located in San Ramon, CA, well beyond commuting distance to any other state.  *See* Exh. A (Complaint, ¶¶ 2, 6).

13.     Therefore, Plaintiff is, and at all times since the commencement of this action has been, a resident and citizen of the State of California.

### B.      **MediFit Is Not A Citizen of California.**

14.     Plaintiff alleges that MediFit "is a corporation duly organized and operating under the laws of the State of New Jersey, and at all times herein involved was doing business in the State of California, including at Chevron Corporation, 6001 Bollinger Canyon Road, San Ramon, CA . . . ." (*See* Exh. A, Compl., ¶ 2.)

4

NOTICE OF REMOVAL BY DEFENDANTS TO USDC

15.    MediFit is now, and was at the time of the filing of this action, a citizen of a State other than California within the meaning of 28 U.S.C. section 1332(c)(1). For diversity purposes, "a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'" *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) (citing 28 U.S.C. § 1332(c)(1)).

16.    The United States Supreme Court in *The Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010), held that a corporate entity's "principal place of business" for determining its citizenship is its "nerve center":

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." **And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center"** ....

*The Hertz Corp.*, 559 U.S. at 93 (emphasis added).

17.    MediFit is now, and ever since this action commenced has been, incorporated under the laws of the State of New Jersey. *See* Soffer Decl., ¶ 3. MediFit's principal place of business is, and has been at all times since this action commenced, located in the State of Arizona. *Id*.

18.    Pursuant to *Davis*, 557 F.3d at 1028 and *The Hertz Corp.*, 559 U.S. at 93, MediFit's principal place of business is Arizona because its "nerve center" is located in that state. MediFit's corporate headquarters are located in Phoenix, Arizona, where MediFit's high level officers and executives direct, control, and coordinate its activities. Soffer Decl., ¶ 3. MediFit's high level corporate officers and executives maintain offices in Phoenix, Arizona, and many of MediFit's corporate level functions are performed in the Phoenix, Arizona offices. *Id*. Additionally, many of MediFit's executive and administrative functions, including corporate finance and accounting, are directed from the Phoenix, Arizona offices. *Id*. Therefore, for purposes of diversity of citizenship, MediFit is, and has been at all times since this action commenced, a citizen of the State of Arizona. 28 U.S.C. § 1332(c)(1).

NOTICE OF REMOVAL BY DEFENDANTS TO USDC

C.       **EXOS Is Not A Legal Entity**

19.      Plaintiff seeks to include as a defendant "EXOS," which she describes as "a business entity, form unknown." (Complaint, ¶ 3). However, EXOS is not an actual legal entity, but rather a legally valid name that MediFit is authorized to do business as. *See* Soffer Decl., ¶ 4, Exh. A. "EXOS" has not been served in this lawsuit.

D.       **Joleen MacKay Is A Sham Defendant Who Must Be Disregarded For Diversity Purposes.**

1.       **"Sham" or "Fraudulently Joined" Defendants Are Disregarded For Diversity Purposes.**

20.      Joleen MacKay is a citizen of California, but her citizenship is irrelevant because she was improperly joined in an effort to defeat diversity jurisdiction. Under the doctrine of fraudulent joinder, "the party's citizenship is disregarded for purposes of assessing subject matter jurisdiction, '[i]f the plaintiff fails to state a cause of action against the [non-diverse] defendant, and the failure is obvious according to the settled rules of the state….'" *Hamilton Materials, Inc. v. Dow Chemical Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)); *Zogbi v. Federated Dep't Store*, 767 F. Supp. 1037, 1041 (C.D. Cal. 1991) (non-diverse defendant may be disregarded if that person's joinder is fraudulent in that no claim can be established against that party). The term "fraudulent" is a term of art and not intended to impugn the integrity of plaintiff or counsel. *McCabe*, 811 F.2d at 1339.

21.      Here, the causes of action in the Complaint asserted against Ms. MacKay are the same as those brought against MediFit: (1) disability discrimination in violation of the Fair Employment and Housing Act ("FEHA"); (2) failure to accommodate disability in violation of FEHA; (3) failure to engage in a good faith interactive process in violation of FEHA; (4) age discrimination in violation of FEHA; (5) race discrimination in violation of FEHA; (6) violations of the California Labor Code; and

6

(7) unfair competition under Business & Professions Code § 15200.[3]  As a matter of law, Plaintiff cannot state those claims against individual defendant Joleen MacKay.

> a.   **Defendant MacKay Is A "Sham" Defendant Because She Cannot Be Held Individually Liable for Plaintiff's Discrimination Claims Under the FEHA.**

22.    Managers and supervisors cannot, as a matter of law, be held individually liable under FEHA for discrimination.  *See Reno v. Baird*, 18 Cal. 4th 640, 645-646 (1988) (individual managers and supervisors are not liable for employment discrimination under the FEHA).  As the Supreme Court recognized, only employers are liable for discrimination under FEHA.  *Id*. at 643 ("We conclude that the FEHA, like similar federal statutes, allows persons to sue and hold liable their employers, but not individuals."); *Janken v. G.M. Hughes Electronics*, 46 Cal. App. 4th 55 (1996) (supervisory employees are not individually liable under FEHA for allegedly discriminatory personnel decisions taken within their role as managers); Cal. Gov't. Code § 12940(a) (unlawful employment practice for "*an employer*, because of race . . . physical disability . . . [or] age . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment.") (emphasis added).  Plaintiff therefore cannot assert her first, fourth, or fifth causes of action for discrimination in violation of FEHA based on disability, age, or race, against Ms. MacKay in this case.

23.    Plaintiff's second and third causes of action for failure to provide reasonable accommodation and failure to engage in the interactive process cannot be asserted against Ms. MacKay for the same reason.  The plain language of the FEHA provides only for such actions to be brought against employers.  *See* Cal. Gov't. Code § 12940 (m)(1) (unlawful employment practice for "*an employer* or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee.") (emphasis added); Cal. Gov't. Code § 12940 (n) (unlawful employment practice for "*an employer* or other entity covered by this part to fail to engage in a timely, good faith, interactive process . . . .") (emphasis added); *Calderon v. Georgia-Pac. Corrugated LLC*, Case No. CV F 08-933 LJO GSA, 2008 U.S. Dist. LEXIS 84060, *4 (E.D. Cal. 2008)

---

[3]    Plaintiff's complaint alleges a violation of "Business & Professions Code § 15200 et seq." (Complaint, ¶ 51).

7

(granting motion to dismiss; "As supervisors or employees, Mr. Bergman and Mr. Wells cannot be held liable for Mr. Calderon's FEHA claims. . . . Mr. Bergman and Mr. Wells cannot be held liable personally as individual defendants for Mr. Calderon's disability discrimination claim, nor for his claim for failure to prevent disability discrimination and/or failure to accommodate.").

24.     Ms. MacKay was at no time Plaintiff's employer within the meaning of the FEHA.  As such, Plaintiff's first through fifth causes of action are not cognizable as to Ms. MacKay.

b.     **Plaintiff Similarly Cannot Assert Her Wage Claims Against Ms. MacKay Because Ms. MacKay Is Not A Managing Agent.**

25.     Plaintiff's sixth cause of action vaguely references "Labor Code Violations."  Although Plaintiff references no law, she appears to allege: (1) failure to pay minimum wages and/or overtime wages; (2) failure to provide meal periods; (3) failure to authorize and permit rest breaks; and (4) failure to pay all wages due at termination.  (Complaint, ¶¶ 16, 44-50).

26.     Individual liability for the wage and hour claims Plaintiff purportedly asserts may only be imposed on a person "who is an owner, director, officer, or managing agent of the employer . . . ."  Cal. Lab. Code § 558.1 (b).  The term "managing agent" has the same meaning as in California Civil Code section 3294 (b), related to the imposition of punitive damages.  *Id*.

27.     "The managing agent must be someone who exercises substantial discretionary authority over decisions that ultimately determine corporate policy."  *White v. Ultramar*, 21 Cal. 4th 563, 573 (1999).  "In order to demonstrate that an employee is a true managing agent under section 3294, subdivision (b), a plaintiff seeking punitive damages would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business."  *Id*. at 577; *see also Cruz v. HomeBase*, 83 Cal. App. 4th 160, 166-68 (2000) (reversing judgment of punitive damages because supervisor in a single outlet of a multi-store chain was, as a matter of law, not a managing agent).

28.     Plaintiff's complaint describes Ms. MacKay as follows: "At all times herein involved, Defendant Joleen McKay [*sic*] ("MCKAY") [*sic*] was and is employed in a managerial capacity by MEDIFIT and/or EXOS, in which capacity MCKAY [*sic*] was a supervisor of Plaintiff."  (Complaint, ¶

8

4). Plaintiff makes no allegation that Ms. MacKay was a managing agent such that wage claims could be brought against her individually. *See Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397, 421-22 (1994) ("In an attempt to show Lawicki was a managing agent, Zurian argues Lawicki had immediate and direct control over her with the responsibility for supervising her performance. However, the fact Zurian reported to Lawicki and that he had the authority to terminate her merely reflect Lawicki was Zurian's *supervisor*, not that he was a managing agent.") (emphasis in original).

29.    Ms. MacKay was not a managing agent and therefore cannot be individually liable for Plaintiff's wage and hour claims. As such, Plaintiff's sixth cause of action is not cognizable as to Ms. MacKay.

c.    **Plaintiff's Claim Related To Unfair Competition Also Fails As To Ms. MacKay.**

30.    Plaintiff's seventh cause of action asserts a claim for unfair competition. California's Unfair Competition Law ("UCL") provides that the "court may make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203. "While the scope of conduct covered by the UCL is broad, its remedies are limited. A UCL action is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) (internal citations omitted). Prevailing plaintiffs in UCL actions are "generally limited to injunctive relief and restitution." *Id.* "[A]n order for restitution is one 'compelling a UCL defendant to return money obtained through unfair business practices to those persons in interest from whom the property was taken . . . . The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Id.* at 1149.

31.    In *Bradstreet v. Wong*, 161 Cal. App. 4th 1440 (2008), the court considered the issue of whether individual defendants could be made to pay unpaid wages as restitution under the UCL. The court found they could not be liable for such restitution. As the court wrote: "The problem with requiring defendants, rather than the Wins Corporation, to pay unpaid wages as restitution is that the

9

NOTICE OF REMOVAL BY DEFENDANTS TO USDC

labor intervener performed was not for defendants personally, but for the employers the Win Corporations. Defendants did not personally obtain the benefit of those services, and the duty to pay wages was owed by the corporations as employers, not by defendants as owners officers, or managers." *Bradstreet*, 161 Cal. App. 4th at 1460. The court continued:

> In the absence of a finding that intervener performed labor for defendants personally, rather than for the benefit of Wins Corporations, or that defendants appropriated for themselves corporate funds that otherwise would have been used to pay the unpaid wages, we agree with the trial court's conclusion that an order requiring defendants to pay the unpaid wages would not be 'restitutionary as it would not replace any money or property that defendants took directly from' intervener. '[T]he notion of restoring something to a victim of unfair competition includes two separate components. The offending party must have obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep.

*Id*. at 1460-61 (emphasis in original) (internal citations omitted).

32.    As in *Bradstreet*, Ms. MacKay cannot be liable under the UCL. An employee of MediFit herself, Ms. MacKay did not personally benefit from Plaintiff's services, and had no duty to pay Plaintiff's wages. *See Bradstreet*, 161 Cal. App. 4th at 1461 ("Not having acquired or directly and personally benefited from intervener's labor without paying for it, or having misappropriated for their personal use corporate funds that could have been used to pay her wages, defendants could not be required to pay the unpaid wages as restitution. Such relief would not be 'restitutionary as it would not replace any money or property that defendants took directly from' intervener."). Plaintiff therefore cannot seek restitution from Ms. MacKay pursuant to her UCL claim. As such, Plaintiff's seventh cause of action is not cognizable as to Ms. MacKay.

E.    **Doe Defendants May Be Disregarded.**

33.    Pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332. *Fristoe v. Reynolds Metals, Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe defendants, 1-10, does not deprive this Court of jurisdiction.

NOTICE OF REMOVAL BY DEFENDANTS TO USDC

F.      **Amount In Controversy Exceeds $75,000**

34.     While Defendants deny any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because it is more likely than not that the amount exceeds the jurisdictional minimum of $75,000. *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 403-404 (9th Cir. 1996) ("the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount." (internal citation omitted)). As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition). In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory). *See also Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972).

35.     Here, considered together, the general and special damages sought by Plaintiff, along with the attorneys' fees and punitive damages that might be awarded if Plaintiff prevails, establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.

36.     *Plaintiff's Claims for Alleged Wage and Hour Violations Establish The Amount In Controversy.* Plaintiff alleges that she is entitled to: (1) $13,600.00 in unpaid overtime; (2) $3,341.25 in unpaid time studying for a job-related test; (3) $9,075.00 for rest break violations; and (4) $2,700 for meal period violations. *See* Exhibit A, Complaint ¶ 16(a)-(d). Plaintiff also seeks four days of waiting time penalties for failure to pay all wages due at termination. *See id.*, ¶ 16(e). Plaintiff alleges that she earned $16.50 per hour and worked 40 hours per week. *See id.*, ¶ 17. Based on these allegations, Plaintiff's claim for waiting time penalties comes to $528 (calculated as $16.50/hour x 8 hours/day x 4 days). *See* Cal. Lab. Code § 203. These alleged damages and penalties together total **$29,244.25**.

37.     Plaintiff further alleges that she has lost earnings at an estimated rate of $2,868.00 since her discharge. *See id.*, ¶ 17. Nearly 14 months have passed since Plaintiff's alleged date of termination

11

on March 11, 2016. *See id*, ¶ 16(e). Her alleged claim for lost earnings therefore currently totals $40,152.

38. Assuming optimistically this matter goes to trial as soon as one year after the filing of Plaintiff's complaint on December 16, 2016, and Plaintiff remains unemployed for a total of 21 months (March 11, 2016 to December 16, 2017), Plaintiff's lost income alone would equal $60,228. Taken together with the damages and penalties Plaintiff alleges as to her other wage and hour claims, Plaintiff's wage and hour claims alone would come to **$89,472.25**. This amount does not include the additional value of employee benefits or Plaintiff's other alleged damages, including emotional distress damages and attorneys' fees. Plaintiff's damages as alleged in the complaint establish that the amount in controversy easily exceeds $75,000.

39. ***The Claims In The Complaint Also Establish The Amount In Controversy.*** Should Plaintiff prevail at trial on her discrimination claims, then it is more likely than not that she would recover over $75,000 in damages. There have been, in recent years, several verdicts in disability discrimination cases entered in favor of plaintiffs in California where the awarded damages exceeded $75,000. *See Salinda v. DIRECTV Inc.*, 2013 WL 5944203 (Los Angeles Sup. Ct.) ($1,178,341 awarded to employee for disability discrimination, failure to prevent discrimination/retaliation, and failure to engage in the interactive process); *Bisharat v. Los Angeles Unified School District,* 2013 WL 1415554 (Los Angeles Sup. Ct.) ($473,750 jury verdict awarded to employee alleging disability discrimination, failure to prevent discrimination, failure to accommodate, failure to engage in the interactive process, and constructive discharge); *Izaguirre v. International Coffee & Tea LLC*, 2013 WL 6624243 (Los Angeles Sup. Ct.) ($125,000 awarded to employee alleging disability discrimination, failure to accommodate, failure to engage in the interactive process, retaliation, and wrongful termination); *Kivman v. Worldwide Aeros Corp.*, 2013 WL 3340152 (Los Angeles Sup. Ct.) ($486,511 awarded to employee alleging disability discrimination, failure to accommodate, and wrongful termination); *Jolly v. City of Long Beach*, 2013 WL 3340512 (Los Angeles Sup. Ct.) ($325,000 awarded to employee alleging disability and age discrimination, retaliation, failure to engage in interactive process, failure to prevent discrimination/harassment, and constructive discharge); *Quiroz v. Ralphs Grocery Company*, 2012 WL

3745798 (Los Angeles Sup. Ct.) (award of $490,356 to employee alleging disability discrimination, failure to accommodate, failure to engage in the interactive process, wrongful termination, and infliction of emotional distress); *Betson v. Rite Aid Corp.*, 2011 WL 3606913 (L.A. County Sup. Ct.) (award of $500,000 to employee in disability action); *Vanderheiden v. City of Alameda*, 2011 WL 1562075 (Alameda County Sup. Ct.) (award of $680,182 to employee in disability discrimination action); *Vaughn v. CNA Casualty of California*, 2008 WL 4056256 (C.D. Cal.) (award of $850,000 to employee in disability discrimination action); *Leuzinger v. County of Lake*, 2007 WL 3022455 (N.D. Cal.) (jury verdict awarding employee $1,679,001 in an action for disability discrimination, failure to accommodate, and failure to engage in the interactive process); *Orue v. Sears, Roebuck & Co.*, 2007 WL 2456108 (L.A. County Sup. Ct.) (award of $173,056 to employee who brought action based on disability and age discrimination against employer who terminated her).  Copies of these verdicts are attached to the Declaration of Elizabeth MacGregor ("MacGregor Decl.") at Exhibit A.

40.    Plaintiff's allegations of discrimination, failure to engage in the interactive process, and failure to provide reasonable accommodation, are similar to the issues in these cases.

41.    **Emotional Distress Damages.**  Plaintiff also claims damages for emotional distress.  *See* Exhibit A, Complaint ¶ 18 ("By reason of the foregoing, Plaintiff has suffered general damages for anxiety, anger, humiliation, and other emotional distress"); *id*, Prayer for relief, p. 9.  A review of jury verdicts in California demonstrates that emotional distress awards in discrimination cases commonly exceed $75,000. *See Kivman*, 2013 WL 3340152 ($165,000 for past and future emotional distress, anxiety, and humiliation); *Vaughn*, 2008 WL 4056256 (C.D. Cal.) (award of $300,000 in past and future non-economic loss to employee in disability discrimination action); *Ismen v. Beverly Hospital*, 2008 WL 4056258 (L.A. County Sup. Ct.) (jury award of $113,000 for emotional distress in a disability discrimination and failure to accommodate action); *Mnaskanian v. 21st Century Ins. Co.*, 2006 WL 2044625 (L.A. County Sup. Ct.) (jury award of $300,000 in non-economic damages for employee denied reinstatement despite request for reasonable accommodation for disability); *Cal. Dep't of Fair Employment and Housing v. County of Riverside*, 2003 WL 24304125 (Riverside County Sup. Ct.) (jury

NOTICE OF REMOVAL BY DEFENDANTS TO USDC

awarded $300,000 for emotional distress damages in an alleged failure to accommodate and disability discrimination case). *See* MacGregor Decl., Exh. A.

42. Plaintiff's allegations that she suffered emotional distress are similar to the issues in these cases.

43. **Attorneys' Fees and Costs.** Plaintiff also claims that she is entitled to attorneys' fees and costs. *See* Exhibit A, Complaint ¶¶ 23, 28, 33, 38, 43, 50, 56; and Prayer for Relief, p. 9. Attorneys' fees are properly considered in calculating the amount in controversy for purposes of removal on grounds of diversity jurisdiction. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory). Under California Government Code section 12965(b), the court in its discretion may award fees and costs to the "prevailing party" in FEHA actions. Although the statute provides that the court "may" award fees, cases hold that a prevailing plaintiff is entitled to fees "absent circumstances rendering the award unjust." *Horsford v. Board of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 394 (2005).

44. Courts routinely award far in excess of $75,000 in attorneys' fees in cases involving disability discrimination. *See, e.g., Crawford v. DIRECTV, Inc.*, 2010 WL 5383296 (Los Angeles County Sup. Ct.) (approving attorneys' fee award of $159,762.50 where arbitrator found the defendant had failed to engage in the interactive process and failed to provide reasonable accommodation); *Denenberg v. Cal. Dep't of Transp.*, 2006 WL 5305734 (San Diego County Sup. Ct.) (attorney's fees award of $490,000 for claims including disability discrimination and failure to accommodate). *See* MacGregor Decl., Exh. A.

45. **Punitive Damages.** Punitive damages are also included in calculating the amount in controversy. *Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages may be taken into account where recoverable under state law); *see* Exhibit A, Complaint ¶¶ 22, 27, 32, 37, 42; and Prayer for Relief, p. 9. Courts have affirmed jury verdicts awarding significant punitive damages in disability discrimination cases. *See, e.g., Ismen*, 2008 WL 4056258 (L.A. County Sup. Ct.) (jury award of $825,000 for punitive damages in a disability

NOTICE OF REMOVAL BY DEFENDANTS TO USDC

discrimination and failure to accommodate action); *Mnaskanian*, 2006 WL 2044625 (L.A. County Sup. Ct.) (jury award of $250,000 in punitive damages for employee denied reinstatement despite request for reasonable accommodation for disability).  Accordingly, Plaintiff's request for punitive damages establishes that the amount placed in controversy by Plaintiff's Complaint exceeds $75,000.00.

46.     Based upon the allegations contained in Plaintiff's Complaint, Defendants are informed and believe that Plaintiff seeks damages within the jurisdictional authority of this Court.   Since diversity of citizenship exists between the parties and the matter in controversy between the parties is in excess of $75,000, this Court has original jurisdiction of the action pursuant to 28 U.S.C. section 1332(a)(1).  This action is therefore a proper one for removal to this Court.

## II.     NO JOINDER REQUIRED

1.     Unnamed, or doe defendants, are not required to join in removal.  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (doe defendants need not join in removal).

## III.     VENUE

2.     Removal to this Court is proper pursuant to 28 U.S.C. sections 1391(b) and 1441(a) because the state court action was filed in Contra Costa County.

## IV.     NOTICE OF REMOVAL

3.     Notice of this removal will promptly be served on Plaintiff and the Clerk of the Superior Court of the State of California in and for the County of Contra Costa.

DATED: May 3, 2017                                    Respectfully submitted,

                                                      SEYFARTH SHAW LLP


                                                      By: */s/ Elizabeth J. MacGregor*
                                                          Brian T. Ashe
                                                          Elizabeth J. MacGregor
                                                          Reanne Swafford-Harris
                                                          Attorneys for Defendants
                                                      MEDIFIT CORPORATE SERVICES, INC. d/b/a
                                                      "EXOS" and JOLEEN MACKAY

NOTICE OF REMOVAL BY DEFENDANTS TO USDC